CASE 30.—PROSECUTION BY COMMONWEALTH OF THOMAS HODGES AND OTHERS FOR PURCHASING TOBACCO IN VIOLATION OF THE POOLING LAW.—February 24, 1910.

## Commonwealth v. Hodges, &c.

Appeal from Christian Circuit Court.

Thos. P. Cook, Judge.

Demurrer to indictment sustained and Commonwealth appeals.—Reversed.

1. Constitutional Law—Statutes—Validity—Presumption.—The presumption is that a statute is constitutional, and it will not be declared unconstitutional unless it is clearly so.

2. Criminal Law—Legislative Power—Making Violation of Contract an Offense.—The power of the Legislature is limited only by the Constitution, so in the absence of prohibition therein it may make a violation of a contract an offense, as it does by Act March 21, 1906 (Laws 1906, c. 117), amended by Act March 13, 1908 (Laws 1908, c. 8), by making it a misdemeanor for the owner of products in a pool to violate his pooling contract by selling without the written consent of the agent selected by the pooling parties.

3. Criminal Law—Legislative Power to Define Crime.—So it is in the power of the Legislature, as it does by Act March 21, 1906 (Laws 1906, c. 117), amended by Act March 13, 1908 (Laws 1908, c. 8), relative to pooling products, to make it an offense for one to buy, knowing that the seller in selling is violating his contract with others.

4. Constitutional Law—Right to Acquire Property.—Act March 21, 1906 (Laws 1906, c. 117), amended by Act March 13, 1908 (Laws 1908, c. 8), having made it unlawful for the owner of pooled products to violate his pooling contract by selling his part of such products without the consent of the agent of the pooling parties, the further provision, making it an offense for persons to buy from him knowing he is so violating his pooling contract, does not interfere with their right under the Constitution to acquire property.

5.  Constitutional Law—Equal Protection of Law.—Act March 21, 1906 (Laws 1906, c. 117), amended by Act March 13, 1908 (Laws 1908, c. 8), which authorizes persons to pool their farm products raised by them by making it an offense for one so pooling his crop to sell it without the consent of the agent of the pooling parties, does not deprive the former of the equal protection of the law, in contravention of Const. U. S. Amend. 14, merely because it is not made an offense for other classes of citizens to violate pooling contracts which they may make.

6.  Constitutional Law—Equal Protection of Laws.—Act March 21, 1906 (Laws 1906, c. 117), amended by Act March 13, 1908 (Laws 1908, c. 8), so as to make it an offense for any one to purchase from a farmer the products of his farm while he has pooled, knowing that the farmer is selling without the consent of the agent of the pooling parties, does not deprive such purchaser of the equal protection of the law, guaranteed by Const. U. S. Amend. 14, because such a purchase of other pooled products is not made an offense.

7.  Statutes—Subjects and Titles—Matters Germane.—Const. section 51, providing that no law shall relate to more than one subject, which shall be expressed in the title, is not contravened by Act March 13, 1908 (Laws 1908, c. 8), entitled "An act to amend" Act March 21, 1906 (Laws 1906, c. 117), entitled "An act permitting persons" to pool their farm products and making contracts in pursuance thereof valid, by the provision making it an offense for one who has pooled his products to sell them without the consent of the agent of the pooling parties, or for one to buy them from him knowing he is so selling them; this being germane to the subject expressed in the title.

8.  Monopolies—Pooling Farm Products.—The acts of March 21, 1906 (Laws 1906, c. 117), and March 13, 1908 (Laws 1908, c. 8), authorizing pooling by farmers of their products, do not violate the federal anti-trust act of July 2, 1890 (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]), known as the "Sherman Law"; they having no relation to interstate commerce, but being confined in their operation to products grown and pooled in the state and to sales therein.

9.  Indictment and Information—Demurrer—Effect.—On demurrer to an indictment, facts not appearing therein, are not available, but are matters of defense.

JAMES BREATHITT, Attorney General, TOM B. McGREGOR, Assistant Attorney General, DENNY P. SMITH and S. WALTON FORGY for the commonwealth.

SELDEN Y. TRIMBLE, HUNTER WOOD & SON and TRIMBLE & BELL for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER —Reversing.

The question arising on this appeal is whether or not the amendment to the pooling act of 1906, enacted by the Legislature in 1908, and commonly known as the "Crecelius Law," is constitutional. The question arises in the following manner: The grand jury of Christian county, Ky., indicted Thomas Hodges and R. C. West for the offense of unlawfully purchasing pooled tobacco. They interposed a demurrer to the indictment, which was sustained by the trial court. Thereupon the indictment was dismissed, and the commonwealth appeals.

The indictment is as follows: "The grand jury of Christian county, in the name and by the authority of the commonwealth of Kentucky, accuse Thomas Hodges and R. C. West of the offense of unlawfully purchasing pooled tobacco, committed in the manner and form as follows, to-wit: That said Hodges and West did, in the county and state aforesaid, on the day of ——, 1909, and before the finding of this indictment, unlawfully, willfully, and knowingly purchase from John Redd his tobacco raised by him in the year 1908, which tobacco had been theretofore and was then by the said Redd by written contract pledged, combined, united, and pooled with the tobacco of other tobacco growers for the purpose of classifying, grading, storing, holding, selling, and disposing of same, in order to and

for the purpose of obtaining a greater or higher price therefor than might or could be obtained or received for same separately or individually, and which tobacco had theretofore been, and was then, in said pool, by the said Redd by written contract pledged for the purposes of said pool and combine, as hereinbefore stated, to the Dark Tobacco Planters' Protective Association, a corporation, as agent for said Redd, to be classified, graded, stored, held, sold, and disposed of by the said Dark Tobacco Planters' Protective Association for the said Redd, the said tobacco then owned by the said Redd, without the written consent of the said agent, the Dark Tobacco Planters' Protective Association, so to do; that said Hodges and West, at the time they purchased said tobacco from the said Redd as aforesaid, knew same had been theretofore and was then pledged in said pool to the said Dark Tobacco Planters' Protective Association as agent as aforesaid, for the purposes aforesaid. Against the peace and dignity of the commonwealth of Kentucky.''

It is not contended that the indictment itself is defective, but that the law upon which it is based is invalid.

. The act of March 21, 1906 (Laws 1906, c 117), is as follows:

''An act permitting persons to combine or pool their crops of wheat, tobacco and other products and sell same as a whole, and making contracts in pursuance thereof valid.

''Be it enacted by the General Assembly of the commonwealth of Kentucky:

''Section 1. It is hereby declared lawful for any number of persons to combine, unite or pool, any or all of the crops of wheat, tobacco, corn, oats, hay

or other farm products raised by them, for the purpose of classifying, grading, storing, holding, selling or disposing of same, either in parcels or as a whole, in order or for the purpose of obtaining a greater or higher price therefor than they might or could obtain or receive by selling said crops separately or individually.

"Sec. 2.   That contracts or agreements made or entered into by persons with each other, the object or intent of which is to unite, pool or combine all or any of the crops of tobacco, wheat, corn, oats, hay, or other farm products, raised by such persons, for the purpose of classifying, grading, storing, holding, selling or disposing of said crops, or any of them, either in parts or as a whole, in order, or for the purpose of obtaining a better or higher price therefor than could or might be obtained by selling said crops separately or individually, are hereby permitted, and shall not, because of any such combination or purpose of said persons, be declared illegal or invalid.

"Sec. 3.   Such persons so entering into such agreement or contract as is set out in the foregoing sections, are hereby permitted to select an agent or agents through or by or with whom said parties so entering into such agreements may classify, grade, store, hold, sell or dispose of said crops, or any of them, and said agent or agents shall have the right to take, receive, hold, store, classify, grade, sell or dispose of said crops so placed in such agreement, as directed or authorized by their principal, for the purpose of accomplishing the object of such combination or agreement between such principals, and contracts and agreements so entered into by such agent or agents for the purpose of classifying, grad-

ing, storing, holding, selling or disposing of said crops so combined, united or pooled, either in parcels or as a whole, are hereby permitted, and shall not, because of any such combination or purpose of such original agreement of such principals so entering into said combination, or of such agent or agents, be declared illegal or invalid.

"Sec. 4.    Whereas, many persons of this commonwealth now desire to combine their respective crops of tobacco, wheat, corn, oats, hay and other farm products, an emergency is now declared to exist which requires that this act should, and it shall, take effect from and after its passage and approval by the Governor."

The amendment to the act of 1906, which was approved March 13, 1908 (Laws 1908, c. 8), is as follows:

"An act to amend section 3 of an act of the General Assembly of the commonwealth of Kentucky, approved March 21, 1906, entitled ' An act permitting persons to combine or pool their crops of wheat, tobacco and other products and sell same as a whole and making contracts in pursuance thereof valid,' being chapter 117 of the Acts of the General Assembly of the commonwealth of Kentucky for the year 1906.

"Be it enacted ·by the General Assembly of the commonwealth of Kentucky:

"Section 1.    *    *    *    All    contracts    heretofore made by any person or persons for the purposes set out in the foregoing sections are hereby declared valid, if otherwise legally binding on the parties. To prevent any breach or violation of any contract made for the purposes set out in the foregoing sections a restraining order and writ of injunction may

be issued by proper officers, as prescribed in the Civil Code of Practice.

"For any breach or violation of any contract entered into for the purposes set out in the foregoing sections, the injured party may recover the damages sustained by him by reason of such violation of such contract of the person violating the same, and also of any person who shall induce or persuade another to violate such contract, which damages shall include the reasonable expense and attorney's fee incurred by the injured party in prosecuting an action to recover such damages, or to prevent a violation of such contract, if the party complaining shall succeed in doing so, which may be recovered in the same action or original proceeding. Said agent when so selected as herein provided shall have the sole right to sell said crop so pooled or combined, and it shall be unlawful for any owner of such crop to sell or dispose of same and for any person to knowingly purchase the same without the written consent of such agent, and upon conviction thereof he or they shall be fined in any sum or amount not exceeding two hundred and fifty dollars for each offense, to be fixed by the jury in their discretion.

"Whereas, many crops of tobacco and other products have been combined and pooled in this state, under contract and agreement entered into for the purposes set out in the above section, an emergency is now declared to exist, which requires that this act should and it shall take effect from and after its passage and approval by the Governor."

Before proceeding to discuss the questions raised on this appeal, it will be necessary to refer to certain decisions of this court bearing upon the validity and interpretation of the act of 1906.

In the case of Owen County Burley Tobacco Society et al. v. Brumback et al., 128 Ky. 137, 107 S. W. 710, 32 Ky. Law Rep. 916, wherein the opinion was delivered by Judge Carroll, but concurred in by the other members of the court; it was held that the act of 1906, in allowing a class of persons to make contracts with each other, the intent of which was to pool and combine their tobacco or other farm products, and to select an agent to handle, hold, and sell such pooled crops, to obtain higher prices than could be received by selling the crops individually, did not violate section 198 of the Constitution of Kentucky, for the reason that it did not authorize a pool to enhance the cost of crops above their real value, but was simply intended to enable the class affected to meet the trusts that controlled the markets in which the farmer was forced to sell, and to place him on such a footing that he might secure a fair and reasonable price for his crops. It was further held, however, that if under the act farmers should combine and pool their crops for the purpose of obtaining a greater price than the real value thereof, and it should be judicially determined that such was the case, the contract would be invalid and without binding force upon one who entered into it, even though he did so voluntarily. It was also held that the act did not violate section 3 of the Bill of Rights, for the reason that while it confers upon a class certain privileges, it does not withhold the enjoyment of those privileges from others. For the same reason it was held that the act did not violate the fourteenth amendment to the Constitution of the United States. Accordingly the act was held to be valid.

In the case of Commonwealth v. International Harvester Co. of America, 115 S. W. 703, 131 Ky., 551, 767,

the harvester company was indicted for a violation of the Kentucky anti-trust act of 1890 (Ky. St., section 3915). That act forbids the formation of pools or combines for the purpose of regulating, controlling or fixing the price of merchandise, manufactured articles, or property of any kind. In that case it was insisted that the defendant was denied the equal protection of the laws guaranteed by the fourteenth amendment to the Constitution of the United States, for the reason that it was made a crime for it to do the very thing which the farmers were permitted to do by the act of 1906. This court, in an exhaustive opinion, approved the views expressed by Judge Carroll in Owen County Burley Tobacco Society v. Brumback, supra, and held that the effect of the act of 1906, when considered in connection with the act of 1890, section 198 of the Constitution, and the fourteenth amendment to the Constitution of the United States, was to confer, not only upon the farmer, but upon all others, the right to pool their products, skill, or capital for the purpose of obtaining the real value thereof.

In discussing the question this court used the following language: "But if it should be conceded that the actual purpose of the Legislature was to authorize farmers to pool their property so as to get for it as much and, if possible, more than its real value, and holding, as we do, that such purpose would be in contravention of section 198 of the Constitution as to the latter purpose, still the act of 1906 would not be a nullity. So far as it was within the legislative power it would be upheld, and the excess alone would be held invalid. An act of the Legislature of this state created the office of prison

commissioners, defined their powers and duties and mode of selection, and fixed their term of office at six years. The Constitution forbade the creation of any office by the Legislature with a term longer than four years. The validity of the act came before this court for determination in Commissioners of Sinking Fund v. George, etc., 104 Ky. 260, 47 S. W. 779 (20 Ky. Law Rep. 938) 84 Am. St. Rep. 454. It was held that the attempt to exceed the limit imposed by the Constitution was void, but that the excess would be rejected, and the act in all other particulars was upheld, subject to that modification. Construing the act of 1906 in consonance with section 198 of the Constitution, the question then is: What is its effect upon the act of 1890? When two or more statutes are enacted at different sessions of the Legislature, all having the same subject, the rule is they are to be treated in pari materia.

"It is thus stated in Sutherland on Statutory Construction, section 238: 'One who contends that a section of an act must not be read literally must be able to· show one of two things: Either that there is some other section which cuts down or expands its meaning, or else the section itself is repugnant to the general purview. The question for the court is, what did the Legislature really direct? and this intention must be sought in the whole of the act taken together, and other acts in pari materia.' It is not the custom of Legislatures to declare their purposes as such. Legislation is usually enacted from time to time bearing on particular subjects. The courts presume that the Legislature intended all its enactments on a given subject to constitute a consistent treatment within constitutional limitations of the whole subject. Provisions of the Con-

stitutions are therefore to be read in conjunction with such statutes, and all of them—the provisions of the Constitutions, state and federal, and the several enactments of the Legislature will be treated as a harmonious consistent system, in preference to supposing that, literally construed, one is repugnant to the others, and some enactments in consequence wholly fail.

"As then, the Legislature had left the act of 1890 upon the statute books, and had enacted the one of 1906, upon the same subject, meaning by it to confer the right upon some to pool their property for the purpose and to the extent not forbidden by section 198 of the Constitution, we must construe these two statutes and the section of the Constitution together. And, in doing so we must take into view the fourteenth amendment to the Constitution of the United States, as it also was presumably in the legislative mind in enacting the last statute. If it be construed that the Legislature intended a discrimination between farmers and all others, their enactment would be void. We must reject that view of it, if any other can be made to apply. If, however, it be construed that the act of 1906 operates to confer upon all persons the same benefits, as was intimated in the opinion in Owen County Burley Tobacco Society v. Brumback, supra, then there is no discrimination. As that construction is possible under the language employed, and as it would sustain the valadity of the act, it must be adopted. It, therefore, follows that appellee and all others have the right, under the existing laws in Kentucky, to pool their property, or combine their capital and other resources, so as to get no more than the real value of their property when sold in the market."

In view of the above decisions, it will be neces-
sary for us to consider and pass upon only such ob-
jections to the law in question as were not determined
in those cases.

It. is first insisted that the law is invalid for the
reason that the Legislature has not the power to make
the violation of a simple contract a crime. In con-
sidering this question we must remember that courts
have nothing to do with the policy of the statute.
When the constitutional power of the Legislature
to enact a law is questioned, the sole duty of the
judicial department of the government is to look to
the provisions of the federal and state   Constitu-
tions, and if they do not, in express terms or by
necessary and proper implication, forbid the exer-
cise of such power, the enactment must be adjudged
valid and enforceable as a law.  Beyond the consti-
tutional restrictions thus to be interpreted the only
limits upon the state Legislature in enacting laws
are its own wisdom, sound judgment, and patriot-
ism.    Furthermore, where it is not clear that the
fundamental law has been invaded, courts will rare-
ly, if ever, interfere to arrest the operation of legis-
lative enactments.  Respect for the wisdom of a co-
ordinate department of the government, as well as
sound policy, forbids such interposition, except upon
clear and satisfactory grounds.  Johnson v. Higgins,
3 Metc. 566.  The presumption is that a statute is
constitutional.  Courts ought not to declare one to
be unconstitutional, unless it is clearly so.

If there is doubt, the expressed will of the Legisla-
ture should be sustained.  Munn v. People of Illinois,
94 U. S. 151, 24 L. Ed. 77.  In 12 Cyc. 136, the rule
is thus stated: "The Legislatures of the  different
states have the inherent power to prohibit and pun-

ish any act as a crime, provided they do not violate the restrictions of the state and federal Constitutions; and the courts cannot look further into the propriety of a penal statute than to ascertain whether the Legislature had the power to enact it." In the case of state enactments we do not have to look for a specific grant of power authorizing the passage of the law; we simply have to ascertain whether or not the power has been denied. The matter of contracts has always been the subject of legislation. Thus the negotiable instruments law regulates contracts with reference to bills, notes and checks. There are statutes regulating contracts with reference to the sale of land and contracts with reference to sureties, conveyances, and mortgages. There are also statutes bearing upon the question of peddler's notes and contracts with reference to the sale of fertilizer. The statute of frauds provides that in certain cases no action shall be brought upon certain classes of contracts. Indeed the state is always interested in the question of contracts. But it is insisted that the statute goes too far when it makes the violation of a contract a criminal offense. How can this be said, if in doing so it does not violate any provision of the state or federal Constitutions? We have upon our statute books a statute making it unlawful for a person fraudulently to sell or dispose of mortgaged property, an act which, it must be conceded, is nothing more nor less than the violation of a simple contract. By the mortgage the mortgagor gives to the mortgagee a lien upon certain personal property to secure an indebtedness. Good faith requires that in default of the payment of the indebtedness the goods mortgaged shall be forthcoming, so that the mortga-

gee's lien may be enforced thereon. When the mortgagor disposes of the goods mortgaged, he simply violates his contract. The Legislature says that if he does so fraudulently, he shall be punished.

It seems to us that the Crecelius law does not differ in principle from the act referred to. The conditions which gave rise to the act are known of all men. At the time of its enactment there was but one buyer for the farmers' tobacco. It mattered not how hard he labored, how valuable his soil, or how fine the quality of the crop he raised, he was obliged to accept whatever that buyer might offer. Indeed in many instances the buyer absolutely refused even to examine his crop, or to make any offer at all. Instead of the plenty to which he was accustomed, and to which he was entitled, he stood face to face with privation and want.

As individuals the farmers were unable to cope with the situation. The General Assembly of the state of Kentucky, perceiving the straits to which the farmers were reduced by reason of the fact that the market for their products had been destroyed, and that their very livelihood—not to say comfort and prosperity—depended, not upon the market value of the products which they raised, but the caprice of one buyer, who gave, not what the articles were reasonably worth, but only that which he cared to give, deemed it wise to enact the law of 1906, authorizing the farmers to pool their products and select an agent to make the sales. Thus it will be seen that the party who sells pooled products without the written consent of the agent to whom it is pooled is not guilty simply of violating his own contract. Manifestly those who go into such a pool do so for the purpose of having the pool effective. It

would not be effective if only one, two, three or four should enter into the combination. Each man who enters the pool goes into it upon the assurance of the good faith of the others. When a party enters the pool, good faith requires that he shall keep his contract. If he fails to keep his contract, his act is one of bad faith towards the other poolers.

While the law in question gives the right of damages to one aggrieved by an unlawful sale of pooled products and also the right to obtain an injunction to prevent such sale, it is manifest that in many instances such means of protection would prove ineffectual. Sometimes the pooler would be insolvent, and an action for damages would result only in costs. Again, the pooled product might be sold before the owner could be enjoined.. To prevent such a state of case, the unlawful selling of pooled products was made a misdemeanor. Having deemed the matter of pooling of sufficient importance to justify the enactment of a law authorizing it to be done, we cannot say that the Legislature exceeded its power when it made the unlawful sale of pooled products a misdemeanor. As was said by the Supreme Court of South Carolina in the case of State v. Williams, 32 S. C. 124, 10 S. E. 877: "If the General Assembly sees fit to make the violation of a particular species of civil contracts a criminal offense, we are unable to discover in the provisions of the Constitution anything which forbids such legislation." The power of the Legislature to declare that which is perfectly innocent in itself to be unlawful is beyond question. Lawton v. Steele, 152 U. S. 133, 14 Sup. Ct. 499, 38 L. Ed. 385.

In the case before us, however, appellees are not members of the pool, but are purchasers of the pool-

ed product. The charge against them is that they purchased the tobacco in question knowing it to be pooled, without the written consent. of the pooling agent. Having held that it was within the power of the General Assembly to make it unlawful for the owner of pooled products to violate his pooling contract by selling without the written consent of the agent, we think it was likewise within its power to enact that a party who knowingly purchased.pooled products, without the written consent of the agent, and who thus assisted in, and brought about the violation of, the pooler's contract, should aiso be punished. The reason for this part of the act was due to the fact that the sole buyer of tobacco was interested in breaking up the pool which prevented him from securing the tobacco at a price far below its market value. If no punishment were imposed upon the party who knowingly purchased pooled tobacco without the written consent of the pooling agent, it would be within his power to offer great inducements to the poolers to violate their contracts, and thus destroy the pool. To guard against this condition, the provision in regard to purchasers was inserted in the act. Such a provision does not interfere with their right to acquire property, for they have no right to acquire property from those who have not the right to sell. That being the case, the provision in regard to purchasers is not invalid on the ground that the Legislature had no right to make it a misdemeanor knowingly to purchase pooled tobacco without the written consent of the pooling agent.

It is next insisted that, because this court has held that the fourteenth amendment to the Constitution of the United States, when considered in con-

nection with the act of 1890, section 198 of our Con-
stitution, and the act of 1906, operates to confer upon
all others the same privileges conferred upon farm-
ers by the act of 1906, the penal clause of the act
of 1908 is in violation of the fourteenth amendment,
because it makes it a crime for the farmer to sell
his pooled products, while all others may sell their
pooled products without subjecting  themselves to
punishment.  If this position were sound, it would
extend the benefits of the  fourteenth amendment
further than they have ever ·been  carried  before.
Plainly stated, the contention is that, because the
fourteenth amendment confers upon others the same
privileges accorded to farmers, the latter may then
complain that they are denied the equal protection
of the laws, as they are liable to punishment for
violating their pooling contracts, while no punish-
ment has been provided for others who violate their
contracts.  This is not a case where a statute confers
a right upon one class, and denies it to all others
similarly situated; nor is it a case where the statute
provides a punishment for one class, and exempts
from its operation others who may  commit  the
identical offense.

It is simply a case where the Legislature regarded
a certain class of contracts of sufficient public im-
portance to make their violation a  misdemeanor.
The act itself does not exempt others; it is silent.
In order for a statute imposing a penalty to be valid,
it is not necessary that all other acts of a similar
character should be punished.  As well might the
bookmaker, who sells pools and who is subject to
punishment therefor, complain of the denial of the
equal protection of the laws because, under the stat-
utes of this state, others may with impunity  sell

pari-mutuel pools upon race tracks. Furthermore, the pooling act is not compulsory; it is optional with the farmers whether or not he enters the pool. The act was passed for his benefit. If he desires to avail himself of its privileges, he must accept the condit ons imposed by the statute. If, having voluntarily pooled his product, he sees fit to violate his contract, and subject himself to the punishment prescribed by the statute, we fail to perceive how he may justly complain of a denial of the equal protection of the law merely because the Legislature has not made it a misdemeanor for others to violate their pooling contracts.

But appellees, who are complaining of the law in question, do not belong to the class who pool their products; they belong to the purchasing class. It is their contention that they are denied the equal protection of the laws because they are liable to punishment for purchasing products pooled by the farmer, whereas it is not made a crime to purchase articles pooled by others. In other words, they insist that the act discriminates between purchasers of products mentioned in the act and purchasers of other pooled products. Manifestly there is no merit in this contention. The alleged discrimination is altogether fanciful. All who purchase pooled products under the circumstances denounced by the statute are alike guilty. They are not discriminated against because purchasers of other pooled products may not be punished. They have the like privilege of purchasing other pooled products without subjecting themselves to punishment. They cannot complain when all others who commit the offense denounced by the statute are punished in like manner. Nor can they complain because others may with impunity purchase

products other than those mentioned in the statute, if they may do the same thing with like impunity. We, therefore, conclude that the act in question does not deny, either to the farmer or to the class represented by appellees the equal protection of the laws guaranteed by the fourteenth amendment to the Constitution of the United States.

But it is claimed that the title of the act of 1908 is not sufficient under section 51 of the Constitution of Kentucky, and that the act is therefore invalid. Section 51 is as follows: "No law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title, and no law shall be revised, amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revised, amended, extended or conferred, shall be re-enacted and published at length." It seems to us that the amendment of 1908 sufficiently complies with the provisions of the above section. It does not attempt to revise or amend, or to extend the provisions of the act of 1906 by referring to its title only. So much thereof as is revised, amended, extended or conferred, is re-enacted and published at length. Furthermore, the amendment relates only to one subject; that is the pooling of the crops mentioned therein. In treating this subject it was competent for the Legislature to make the violation of the contracts therein referred to a misdemeanor without referring to this fact in the title. The penal clause was adopted merely for the purpose of making the pooling contracts effective, and was germane to the subject expressed in the title. We, therefore, conclude that the act is not invalid by reason of its title being defective.

Finally, it is insisted that the acts of March 21, 1906, and of March 13, 1908, considered separately and together, are in violation of the federal anti-trust act of July 2, 1890, known as the "Sherman Law" (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]). The acts of 1906 and 1908, however, have no relation to interstate commerce; they are confined in their operation to products grown and pooled in this state, and to sales made therein. Abstractly considered, then, the acts in question are not in conflict with the Sherman law. For the purpose, however, of showing that the Dark Tobacco Planters' Protective Association, the agent with whom the tobacco alleged to have been purchased by appellees was pooled, is an unlawful combination in restraint of trade or commerce among the several states, appellees have incorporated in this ground for demurrer certain facts which do not appear in the indictment. Such facts, however, are not available on demurrer. On a plea of not guilty they may be introduced in evidence. It will then be the duty of the court to determine whether or not they present a defense to the indictment.

Being of the opinion that the act in question is valid, and that the indictment based thereon is sufficient, it follows that the demurrer thereto was improperly sustained. The judgment is therefore reversed, and cause remanded, with directions to overrule the demurrer to the indictment.