W. E. LEE, MIRIAM MAYS LEE, HIS WIFE, AND GROWERS SALES CORPORATION, A CORPORATION, *Appellants,* v. CLEARWATER GROWERS ASSOCIATION, A CORPORATION, AND FLORIDA CITRUS EXCHANGE, A CORPORATION, *Appellees.*

Division B.

Opinion Filed February 11, 1927.

1. In construing statutes and contracts against monopolies or in restraint of trade both State and Federal Courts apply the rule of reason rather than the literal import of the statute and have said in substance that it must amount to an undue or unreasonable restraint of trade. It must in other words be such a restraint as to be detrimental to public welfare and obnoxious to public policy.

2. Courts universally indulge the presumption that all contracts are legal, and when legal on its face its illegality must be alleged and proven.

3.  Ordinarily a contract will not be declared void in restraint of trade which does not attempt to limit production or control and fix the price of the commodities embraced in it beyond their real value.

4.  Agreements fixing the amount of liquidated damages in co-operative marketing contracts will be upheld in the absence of a showing that the amount is unjust, oppressive or disproportionate to the damages that would result from a breach of the agreement.

5.  Paragraph seven of Section 4514, Revised General Statutes of Florida, authorizing injunction to prevent the breach of a co-operative marketing contract and require its specific performance does not contravene any general law of this State and was well within its legislative prerogative.

An Appeal from the Circuit Court for Pinellas County; Freeman P. Lane, Judge.

Affirmed.

*Billie B. Bush,* for Appellants;

*Baskin & Jordan,* and *William Hunter,* for Appellees.

TERRELL, J.—Appellee, Clearwater Growers Association, is a co-operative marketing association organized pursuant to Chapter 5958, Acts of 1909, as amended by Chapter 7383, Acts of 1917, as amended by Chapter 9144 and Chapter 9300, Acts of 1923, as amended by Chapter 10097, Acts of 1925, Laws of Florida. It is a corporation not for profit, organized for the purpose of picking, packing, processing and marketing in a systematic and orderly manner the citrus fruits produced or controlled by its members.

The appellants, W. E. Lee and Miriam Mays Lee, his wife, are members of appellee, Clearwater Growers Association, and entered into contract with it to pick, haul,

pack, process, ship, sell and market all their citrus fruits grown on certain lands therein more specifically described. Subsequently during the life of said contract appellants commenced disposing of their citrus fruits to other parties covered by said contract, and appellee, Clearwater Growers Association, brought its bill of complaint in the Circuit Court of Pinellas County seeking to enjoin the sale and delivery of any citrus fruits from the lands described in said contract to any person or persons other than appellees.

The Florida Citrus Exchange was permitted by petition to intervene and become a party complainant, a demurrer to both the bill of complaint and petition for intervention was overruled and a temporary restraining order was granted, from which appeal was prosecuted to this Court.

It is first contended that the contract between appellants and appellee, Clearwater Growers Association, is violative of Sections 12 and 17 of the Declaration of Rights of the Constitution of the State of Florida in that the law under which said appellee is created impairs the obligation of a contract in that appellee is in no way bound on its part in damages to appellants for breach of the contract complained of.

This contention is perhaps argued inferentially in brief of appellants, but under the well established rule of this Court it might properly be passed by us without consideration; suffice it to say that we know of no rule of law on which such a contention could be grounded.

The purpose and policy of the law authorizing the incorporating of Co-operative Marketing Associations such as appellee is clearly set forth in Section One of Chapter 9300, Acts of 1923, Laws of Florida, in the following terms:

"Declaration of Policy. In order to promote, foster and encourage the intelligent and orderly marketing of agricultural products through co-operation and to eliminate speculation and waste; and to make the distribution of agricultural products as direct as can be efficiently done, between producer and consumer; and to stabilize the marketing of agricultural products, this Act is passed."

When analyzed it clearly appears that Co-operative Marketing Associations are designed for a fourfold purpose, viz: (1) to promote, foster and encourage the intelligent and orderly marketing of agricultural products through co-operation; (2) to eliminate speculation and waste in such marketing; (3) to distribute agricultural products between producer and consumer as efficiently and directly as possible, and (4) to stablize the marketing of agricultural products.

Co-operative marketing in other words is another name for a great movement of late years among the agricultural, horticultural and stock-raising classes to organize for the purpose of more effectively, economically and equitably distributing and marketing their products. In the south and the southeast co-operative marketing associations have been organized to market cotton, citrus fruits, tobacco, peanuts, rice, peaches, vegetables and dairy products; in the east such associations are organized to market fruits, potatoes and berries; in the middle west they are organized to market wheat, potatoes, dairy products and apples, and in the far west to market wheat, citrus fruits, grapes and berries, and most of the known fruits and vegetables. In aggregate value the products handled by these associations annually run into many millions and perhaps billions of dollars. They have become a necessary factor in our economic life "not only as a matter of justice, but also as a matter of existence to the producers of the great

staples of the country, and as a protection against the gigantic combinations of capital which have been taking all the profits, or more which should have gone to the producers of the great staple crops of the country and to furnish a reasonable and decent wage for the laborers in such industries.''

The Columbia Law Review of February, 1923, contains a very illuminating article on the history of co-operative marketing in this country, from which the following pertinent comment is taken:

''From year to year, the movement towards the co-operative marketing of farm products is assuming greater scope and greater economic importance. On the Pacific Coast the large fruit growers co-operatives have become by far the most important factors in the marketing of citrus fruits, raisins and grapes, prunes and apricots, and similar products. The annual turn-over of co-operative associations in California alone is approximately $300,-000,000. In the wheat and corn belts, co-operative country grain elevators have been a familiar feature for a generation, and their importance is said to be growing. Co-operative creameries and cheese factories play a significant part in the economy of dairy farming in the Middle West. Associations of potato growers, of truck gardeners, of growers of berries, apples and vegetables, for canning or direct consumption, have been known for years. It was estimated that in 1920 there was at least 14,000 farmers' buying and selling associations in the United States. In an earlier estimate the annual business of co-operative marketing associations in the United States was placed at about $1,000,000,000.''

Acts providing for the creation of co-operative marketing associations similar to that under review here have been before the courts of last resort for interpretation in

various parts of the country and have invariably been upheld. Oregon Growers' Co.-op. Ass'n. v. Lentz, 107 Ore. 561, 212 Pac. Rep. 811; Washington Cranberry Growers' Ass'n. v. Moore, 117 Wash. 430, 201 Pac. Rep. 773; 204 Pac. Rep. 811, 25 A. L. R. 1077; Brown v. Staple Cotton Co-op. Ass'n., 132 Miss. 859, 96 South Rep. 849; Tobacco Growers' Co-op. Ass'n. v. Jones, 185 N. C. 265, 117 S. E. Rep. 174, 33 A. L. R. 231. The foregoing cases cover many phases of the law of co-operative marketing and are decisive of every question raised in the instant case, but the following are also in point: Burley Tobacco Soc. v. Gillaspy, 51 Ind. App. 583, 100 N. E. Rep. 89; Commonwealth v. Hodges, 137 Ky. 233, 125 S. W. Rep. 689; Ex Parte Baldwin County Producers' Corporation, 203 Ala. 345, 83 South. Rep. 69; Bullville Milk Producers Ass'n. v. Armstrong, 108 Misc. Rep. 582, 178 N. Y. S. 612; Anaheim Citrus Fruit Ass'n. v. Yeoman, 51 Cal. App. 759, 197 Pac. Rep. 959; Castorland Milk & Cheese Co. v. Shantz, 179 N. Y. S. 131; Poultry Producers of Southern California v. Barlow, 189 Cal. 278, 208 Pac. Rep. 93.

It is next contended that the contract under review is one in restraint of trade and therefore violative of the Constitution of the United States.

In construing statutes and contracts against monopolies or in restraint of trade both State and Federal Courts in this country have applied the rule of reason rather than the literal import of the statute and have said in substance that it must amount to an undue or unreasonable restraint of trade. It must in other words be such a restraint as to be detrimental to public welfare and obnoxious to public policy. Courts universally indulge the presumption that all contracts are legal and when legal on its face its illegality must be alleged and proven. There is no attempt here to limit production or control or

to fix the price in any market of the commodities embraced in the contract, and so far as we have been able to find no contract has been declared void that does not do this. United States v. United States Steel Corporation, 251 U. S. 417, 64 L. Ed. 343, 40 Sup. Ct. Rep. 293; Tobacco Growers Co-op. Ass'n. v. Jones, *supra;* Brown v. Staple Cotton Co.-op. Ass'n., *supra;* Washington Cranberry Growers' Ass'n. v. Moore, *supra.* The English rule appears to be "that when the restraint is such only as will afford a fair protection to the interests of the party in favor of whom it is given, and is not so large or extensive as to interfere with the interest of the public, it will be sustained." Horner v. Graves, 7 Bing. (Eng.) 735, 20 E. C. L. 310. We find nothing in the contract here attacked that shows an effort to procure prices beyond their real value, that amounts to an unreasonable restraint of trade or that would be detrimental to public welfare or obnoxious to public policy.

On this point it was competent for the Legislature to declare the policy of the State, which it did in Section 24 of Chapter 9300, Acts of 1923, as follows:

"Associations Not in Restraint of Trade. No association organized hereunder shall be deemed to be a combination in restraint of trade or an illegal monopoly; or an attempt to lesson competition or fix prices arbitrarly, or shall the marketing contracts or agreements between the association and its members or any agreements authorized in this Act be considered illegal or in restraint of trade."

We will not here attempt to discuss the extent to which parties may contract in the light of this provision except to say that in our opinion the terms of the instant contract are well within the principles under which such contracts are upheld.

It is next contended that Paragraph Twelve of the contract between appellants and appellees providing for fixed or liquidated damages in the event of a breach thereof is unjust and disproportionate to any actual damage that might be shown.

In response to this challenge it will be observed that paragraph (b) of Section 17 of Chapter 9300, Acts of 1923, authorizes appellee to fix sums to be paid as liquidated damages by the members thereof upon the breach by them of the provisions of the marketing contract.

The law seems well settled that such agreement for liquidated damages will be upheld in the absence of a showing that the amount is unjust, oppressive or disproportionate to the damages that would result from a breach of the agreement. Tobacco Growers' Co-op. Ass'n. v. Jones, *supra;* Brown v. Staple Cotton Co-op. Ass'n., *supra.*

In this case the amount of liquidated damages was fixed at fifty cents for each standard box of fruit grown and sold. This amount was agreed to by appellants and there is no showing whatever that it is unjust, oppressive or disproportionate to the damages that might result from a breach of the contract.

It is last contended that Paragraph Seven of Section 4514, Revised General Statutes of Florida, relating to Co-operative Marketing Associations is invalid because it contravenes the general law of this State with respect to granting and issuing writs of injunction.

That part of Section 4514, Revised General Statutes, which is here complained of is as follows:

"In the event of any breach or threatened breach of a marketing contract by a member, the association shall be entitled to an injunction to prevent the further breach

of the contract, and to a decree of specific performance thereof.''

It is not contended that this provision of Section 4514, which was amended by Chapter 10097, Acts of 1925, is violative of any provision of the fundamental or organic law of this State, or of the United States. In Washington Cranberry Growers' Ass'n. v. Moore, *supra*, it was held that injunction would lie to restrain the breach of a contract of the character of the one involved here, thereby indirectly affecting its specific performance, where the intent was to rely on performance and the contract is one which could not be specifically enforced in a court of equity of the fact that it would require the performance of continuous duties. Oregon Growers Co-op. Ass'n. v. Lentz, *supra;* Tobacco Growers Co-op. Ass'n. v. Jones, *supra,* and cases therein cited.

The temporary restraining order here complained of was fully authorized by Section 4514, Revised General Statutes of Florida, as amended by Chapter 10097, Acts of 1925, and is well within the rule announced in Washington Cranberry Growers' Ass'n. v. Moore, *supra.*

On the questions raised we are impelled to hold both the contract and the law under which appellees are created good, so the decree of the Chancellor is affirmed.

Affirmed.

WHITFIELD, P. J., AND BUFORD, J., concur.

ELLIS, C. J., AND STRUM AND BROWN, J. J., concur in the opinion.