379 So.2d 471 (1980)
OUTDOOR RESORTS OF AMERICA, INC., Appellant,
v.
OUTDOOR RESORTS AT NETTLES ISLAND, INC., et al., Appellee.
No. 79-866.
District Court of Appeal of Florida, Fourth District.
February 6, 1980.
James E. Slater and Scott J. Johnson of Maguire, Voorhis & Wells, P.A., Orlando, for appellant.
Rod L. Tennyson of Ombres, Powell, Tennyson & St. John, P.A., West Palm Beach, for appellee.
LETTS, Judge.
The issue here involves retention by a developer of the exclusive right to rent recreational vehicle site lots for a fifty percent commission, when individual lot owners are not using them. The trial judge, citing Section 542.12, Florida Statutes (1977), held that rights retained were in restraint of trade because local real estate brokers in the community were thus precluded from plying their trade at the camping resort. We reverse.
This particular recreational vehicle park was developed to consist of 1585 pads, each 35 feet by 60 feet, utilizing a condominium concept. Under this set-up a person would buy a pad at the camping resort and get fee simple title to it, together with an undivided interest in the common elements of the camp. Included in the declaration of condominium was Article XI providing as follows:
PROVISIONS RELATING TO SALE OR RENTAL OF CONDOMINIUM UNITS
No restrictions are placed herein as far as selling any condominium unit. The developer, however, shall have for a period of ninety-nine (99) years from the date of this Declaration the exclusive right, in the absence of use by the Owner or his designated guest, to rent lots which are a part of the Declaration at scheduled rates promulgated from time to time by the Developer. The Developer shall retain for its services 50% of the gross amount of the rental collected on any lot with the remaining 50% reserved for the benefit of the lot owner. As partial consideration for the aforesaid, the Developer shall undertake an advertising program to promote the rental of said units, both those units owned by the Developer and those units sold and in private ownership.
This exclusive right of the Developer to rent lots which are a part of the Declaration shall be binding on each member, his successors and assigns, and shall constitute a covenant running with the land of each condominium unit.
*472 The quoted wording employed in the declaration is not without legal significance inasmuch as it has obviously been especially chosen in response to a decision out of this court six years ago, which held that such wording was not an unreasonable restraint on alienation. See Holiday Out in America at St. Lucie, Inc. v. Bowes, 285 So.2d 63 (Fla.4th DCA 1973).
No doubt the Holiday Out decision explains why the lot owners did not allege an unreasonable restraint on alienation in this case. Thus there is no occasion for us to revisit Holiday Out for that issue is not now before us. Nor do the affirmative defenses suggest the provision is unconscionable under Section 718.302(2), Florida Statutes (1977). In fact the affirmative defenses (other than a procedural one) are based solely upon the premise that Article XI is in violation of public policy because the article as quoted has a tendency to restrain real estate brokers in the exercise of their trade thus stifling competition in the real estate business and creating a monopoly. The trial judge agreed.
There is no doubt this quoted clause is very one-sidedly in favor of the developer,[1] however, as we have said, the only issue presented to us, and the trial judge, is whether or not the clause is in restraint of trade.
The Florida case cited to us on this question is Stewart v. Stearns & Culver Lumber Co., 56 Fla. 570, 48 So. 19 (1908). In Stewart the owner of a sawmill, employing a large percentage of the population of a local community, entered into a contractual arrangement with a general store owner under which the mill was to issue checks or coupons to its employees against their wages. The coupons would be exchangeable for merchandise only at the general store, so by such means the general store owner had a lock on all the shopping of the majority of the population in the community. The court found that such an arrangement effectively prevented any other rival shopkeepers from competing and that the arrangement was injurious and detrimental to the general public welfare of the community.
The set-up in Stewart appears to be a far cry from the case now before us. Here we have an exclusive rental arrangement, set forth in a binding contract between the parties, covering but 1585 lots, each only 2100 square feet, in a recreational park, slap dab in the middle of one of the fastest developing residential areas in the entire United States.[2] Furthermore the lots in question, if and when they are rented, only fetch about $450 a month. There is simply no way that such an arrangement could be said to effectively restrain the real estate brokerage profession from exercising its chosen role in this business community, notwithstanding that it stifles their efforts on this particular site.
We are aware that the wording employed in these restraint of trade situations and in the Florida statute[3] is amorphous to say the least. Technically, any exclusive arrangement in a contract is in restraint of trade. However, much more than that is required, for it must be shown that the restraint is unreasonable, detrimental to the public welfare and obnoxious to public policy. Lee v. Clearwater Growers' Ass'n, 93 Fla. 214, 111 So. 722 (1927). We cannot sustain any such showing from the record in this case.
Finally we note that the Florida Supreme Court has recently ruled that exclusive 99 year recreational leases are not in restraint of trade. Avila South Condominium Ass'n, Inc. v. Kappa Corp., 347 So.2d 599 (Fla. 1976); also see Point East One Condominium v. Point East, etc., 348 So.2d 32 (Fla.3d DCA 1977). There is no doubt that the mechanics of a recreational lease differ *473 from an exclusive rental agreement. However the bottom line is similar, in that both provide the developer of a condominium site with long term large profit at the expense of individual unit owners.[4]
REVERSED AND REMANDED FOR ENTRY OF JUDGMENT IN ACCORDANCE HEREWITH.
DOWNEY, C.J., and MOORE, J., concur.
NOTES
[1] However, all parties concede that the sale of the lots themselves was without profit  the profit to come from this rental arrangement.
[2] We confess to a taking of judicial notice of the population and building explosion in and around Stuart, Fort Pierce, Hutchinson Island and Nettles Island, the brokers trade area referred to in the transcript.
[3] § 542.12(1), Fla. Stat. (1977).
[4] But see Silver v. Abbot Realty, Inc., 249 So.2d 38 (Fla.3d DCA 1971).