A. Irwin **MILLER** et al., **Individually and on behalf of themselves and all other condominium apartment unit owners of the Hollybrook Golf & Tennis Club Condominium, Plaintiffs-Appellants,**

v.

Felix **GRANADOS** et al., **Defendants-Appellees.**

No. 75–2215.

United States Court of Appeals, Fifth Circuit.

March 25, 1976.

Jeffrey E. Streitfeld, Alan S. Becker, Miami Beach, Fla., for plaintiffs-appellants.

Thomas E. Byrd, Borden R. Hallowes, Ft. Lauderdale, Fla., for defendants-appellees.

Before GEWIN and AINSWORTH, Circuit Judges, and MARKEY *, Chief Judge.

AINSWORTH, Circuit Judge:

Plaintiffs appeal from the dismissal of their complaint seeking treble damages and injunctive relief for injuries sustained by reason of defendants' use of an alleged tie-in sales arrangement, in violation of Section 1 of the Sherman Act (15 U.S.C. § 1). We reverse and remand.

Plaintiffs-appellants ["Unit Owners"] are individual condominium unit owners and stockholders of Hollybrook Golf and Tennis Club Condominium, Inc., a Florida corporation [the "Association"]. Unit Owners filed this class action in behalf of themselves and all other condominium owners at the Hollybrook complex against six persons individually and d/b/a Hollybrook Condominium Venture, a partnership, and the Association [hereinafter collectively referred to as the "Developer"].

Count I of the complaint alleges that the individual defendants in their multicapacity, i. e., Manager, Developer and controlling officers and directors of the Association,[1] have conspired and continue to do so in direct restraint of trade and

---

* Of the U. S. Court of Customs and Patent Appeals, sitting by designation.

1. The Partnership, Developer and Manager are interlocking coextensive entities, each composed of the six individual defendants.

services, by entering into an exclusive Operational Management Agreement for the purpose of requiring the Manager to provide goods, services and administrative control of the Hollybrook complex.[2] Under the agreement the Association is required for six years to contract exclusively for the management services of the Manager, which services are provided for a fee of $120 quarterly to be paid by each individual unit owner (other than the Developer in the discretion of the Developer) to be increased at regular intervals in accordance with the Cost of Living Index. Count I further alleges that the sales of the condominium units, in an amount in excess of $40,000,000, involve interstate commerce through the use of the United States Postal Service, news and advertising media operating in interstate commerce, and through the substantial number of sales and resales to out-of-state purchasers, and the purchase of services, facilities and materials from out-of-state dealers.[3]

Subsequent to the filing of the complaint and prior to Developer's response thereto, Unit Owners moved for a preliminary injunction and stay order to enjoin Developer from prosecuting five state court foreclosure actions against certain condominium unit owners for failure to pay manager's fees. After a hearing on the motions the District Court denied them and *sua sponte* dismissed the complaint in its entirety, concluding that the Court

"should adopt the doctrine of abstention under *Younger v. Harris* [401 U.S. 37, 91 S.Ct. 746 [, 27 L.Ed.2d 669] (1971)] with respect to this immediate suit, because it has not been shown to the Court's satisfaction that any or all of the issues raised by the plaintiffs could not be raised in and be decided

by the State court. The Court's ruling, of course, in the event there are federal questions of constitutional dimension and the State remedies have been exhausted, would give way to the institution of a federal action. However, at this point, there is no such situation which would raise federal questions of constitutional dimension and the instant cause is hereby DISMISSED."

*Jurisdiction and Abstention*

■ We first dispose of the District Court's erroneous reasons for declining jurisdiction and abstaining under the *Younger v. Harris* doctrine. The general jurisdictional statute conferring on federal courts jurisdiction over an "Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies" is not predicated on the existence of a constitutional question. 28 U.S.C. § 1337. This is also true of the specific statute on which Unit Owners base their antitrust suit. Section 1 of the Sherman Act, 15 U.S.C. § 1. Moreover, the jurisdiction conferred by Congress on federal courts under the Sherman Act is exclusive. *General Inv. Co. v. Lake Shore & M. S. Ry. Co.*, 260 U.S. 261, 43 S.Ct. 106, 67 L.Ed. 244 (1922). In regard to the District Court's reason for abstaining, it is obvious that the *Younger v. Harris* doctrine was misapplied. Plaintiffs were not parties to the state foreclosure proceedings. Moreover, the relief sought here—treble damages and injunctive relief because of the alleged tying agreement—in view of the jurisdictional exclusiveness of the Sherman Act, cannot be obtained in a state court. Developer concedes as much. Nor can the contention by Developer, i. e., that state action in the realm

2. Numerous additional functions over which Manager has exclusive power and control are detailed in the complaint, e. g., maintenance and repair work; purchase of equipment and materials; hiring of attorneys, golf and tennis instructors; co-mingling and use of Association funds without the obligation of accounting to the Association therefor; providing and charging for golf carts (the use of which is

mandatory), food, drinks, storage and locker rental.

3. The additional counts of the complaint invoke the pendent jurisdiction as well as diversity jurisdiction of the court and concern the application of Florida statutes and common law principles to interpretation of the contract.

of condominiums bars federal antitrust jurisdiction, justify the District Court's dismissal of this suit. As the Supreme Court recently said in *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 790, 791–792, 95 S.Ct. 2004, 2015, 44 L.Ed.2d 572, 587 (1975):

> "The threshold inquiry in determining if an anticompetitive activity is state action of the type the Sherman Act was not meant to proscribe is whether the activity is required by the State acting as sovereign. . . . It is not enough that . . . anticompetitive conduct is 'prompted' by state action; rather, anticompetitive activities must be compelled by direction of the State acting as a sovereign." [4]

There is nothing in the Florida state statutes relied on by Developer which requires the use of management contracts in the operation of a condominium, much less the use of a specified manager.[5]

### The Cause of Action

Developer contends that the language of the order dismissing the complaint implies that the District Court considered the allegations of the antitrust claim and predicated its dismissal on the failure of Unit Owners to state a cause of action. We accept the premise but disagree with the conclusion.

Unit Owners contend that the Operational Management Agreement, which conditions purchase of the condominium units on acceptance of the management contract under which the manager provides all services, properties and administration for the complex, constitutes a tie-in agreement of two products, (1) the condominium unit, the purchase

of which is mandatorily tied in to (2) the agreement. Developer's response to this contention is that the sale of one product only is involved, citing *Dehydrating Process Co. v. A. O. Smith Corp.*, 1 Cir., 1961, 292 F.2d 653. This argument, however, is premature. There was no motion to dismiss before the District Court, the defense was not pled, and consequently it is not properly before us. Alternatively, Developer contends that even if two products are involved, a tie-in would not be an unlawful or unreasonable restraint upon trade because of the necessity to protect its goodwill during the period in which it continues to own and have available for sale a significant number of units. It argues that it has a legitimate interest in assuring proper management and maintenance of the apartment complex during the active sales program under way, and that if each owner were allowed to choose his own managerial services the result would be chaotic. This contention, also ill-timed, misconceives the nature of antitrust violations, since once a tying arrangement is found to exist in context of sufficient economic power, its illegality is established without further inquiry into business excuses for its use. *United States v. Loew's, Incorporated*, 371 U.S. 38, 83 S.Ct. 97, 9 L.Ed.2d 11 (1962). The District Court has yet to make the initial determination of whether a prohibited tying sales arrangement exists.

Tying arrangements have been defined by the Supreme Court as:

> "[A]n agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier. Where such conditions are successfully exacted competition on the merits with respect

---

4. *See Parker v. Brown*, 317 U.S. 341, 350–352, 63 S.Ct. 307, 313–314, 87 L.Ed. 315, 325–327 (1943); *Continental Ore Co. v. Union Carbide*, 370 U.S. 690, 706–707, 82 S.Ct. 1404, 1414–1415, 8 L.Ed.2d 777, 788–789 (1962).

5. *See* Florida Statutes 711.13(4), 711.66(1), 711.69(13), 711.80, 711.83, which contain general provisions for regulation by the State of Florida for the maintenance, management and operation of condominiums and invest power in the State to enforce and insure compliance with the regulations and to receive and investigate complaints.

to the tied product is inevitably curbed. Indeed 'tying arrangements serve hardly any purpose beyond the suppression of competition.' *Standard Oil Co. of California and Standard Stations v. United States*, 337 U.S. 293, 305–306, 69 S.Ct. 1051, 1058, 93 L.Ed. 1371, 1381–1382. They deny competitors free access to the market for the tied product, not because the party imposing the tying requirements has a better product or a lower price but because of his power or leverage in another market."

*Northern Pacific Railway Company v. United States*, 356 U.S. 1, 5–6, 78 S.Ct. 514, 518, 2 L.Ed.2d 545, 550 (1958). "[T]ying agreements fare harshly under the laws forbidding restraint of trade," *Times-Picayune Pub. Co. v. United States*, 345 U.S. 594, 606, 73 S.Ct. 872, 879, 97 L.Ed. 1277, 1288 (1953), and are unreasonable per se where a party has sufficient economic power over the tying product to appreciably restrain free competition for the tied product and the amount of interstate commerce involved is "not insubstantial." *Fortner Enter., Inc. v. United States Steel Corp.*, 394 U.S. 495, 501, 89 S.Ct. 1252, 1257, 22 L.Ed.2d 495, 503–504 (1969); *International Salt Co. v. United States*, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20 (1947); *Northern Pacific Railway Company v. United States, supra*, 356 U.S. at 6, 78 S.Ct. at 518, 2 L.Ed.2d at 550.

■ Under the aforementioned authorities we find that Count I of the complaint alleges all of the elements of a tie-in arrangement involving a not insubstantial amount of interstate commerce, and sufficient economic leverage in the market with the potential of destroying free competition, which allegations on their face state a cause of action cognizable under the Sherman Act. Because of the grant by Congress to federal courts of exclusive jurisdiction over the antitrust laws of the United States, it was error for the District Court to dismiss the complaint.

Reversed and remanded.