348 So.2d 32 (1977)
POINT EAST ONE CONDOMINIUM CORPORATION, INC., et al., Appellants,
v.
POINT EAST DEVELOPERS, INC., et al., Appellees.
No. 76-469.
District Court of Appeal of Florida, Third District.
June 28, 1977.
*33 Becker & Poliakoff and Alan S. Becker, Miami Beach, for appellants.
Steel, Hector & Davis and Darrey A. Davis, Coral Gables, Broad & Cassel and Lewis Horwitz, Bay Harbor Island, for appellees.
Robert L. Shevin, Atty. Gen., as amicus curiae.
Before HENDRY, C.J., and PEARSON and HUBBART, JJ.
PEARSON, Judge.
This is an appeal from a final order dismissing the complaint[1] of (1) condominium associations in several large condominium development units and (2) the individual condominium owners as the claimed representatives of a class of all the owners. The complaint sought a declaration that a 99 year recreational facility lease is unlawful and void. The defendants are (1) the developer of the condominiums, (2) the lessors of the recreational facility lease, and (3) two savings and loan associations alleged to have joined in the declarations of condominium, to have supplied capital for the development and to be holding mortgages encumbering the property. The Attorney General of Florida moved for and was granted leave to file a brief as amicus curiae.
The complaint is in five counts, all seeking essentially the same relief and based upon the same ultimate facts, but urging different claims for the illegality of the recreational facility lease. Primarily, the counts are as follows: Counts one and two claim that the lease is void because of the Florida Deceptive and Unfair Trade Practices Act, Section 501.201, et seq., Florida Statutes (1975). Count three claims that the lease violates the Florida Condominium Act, specifically Section 711.66(5)(e), Florida Statutes (1975). Count four claims that the lease violates, by way of its provision for a lien upon the individual units for unpaid rent, the Florida Constitutional ban upon forced sale of a homestead. Count five claims that all of the defendants, including the savings and loan associations through their actions of drafting, approving and execution of the declarations of condominiums and the recreational facility lease, violated Chapter 542, Florida Statutes (1975), which prohibits combinations restricting trade and commerce.
The trial judge in his final order of dismissal set out the basis for his order as follows:
"The subject Community Facility Lease was executed, and the vested rights and obligations of the parties accrued thereunder more than seven years prior to the enactment and effective date of the Florida Deceptive Practices Act and more than eight years prior to the enactment and effective date of the amendment to *34 the Condominium Act. At the time of execution, such leases were authorized by the Condominium Act (Section 711.121, Florida Statutes). The relief sought by plaintiffs would result in the destruction of the pre-existing vested rights of the defendants under the Community Facility Lease. The legislation relied on as the basis for the relief sought in this cause cannot be applied retrospectively to the subject Community Facility Lease without infringing upon the constitutional inhibition against impairment of the obligation of contracts. Plaza del Prado Condominium Association, Inc. v. The Del Prado Management Company, Inc., Fla.App. 1974, 298 So.2d 544; Trustees of Tufts College v. Triple R. Ranch, Inc., Fla. 1973, 275 So.2d 521.
"The allegations as to violations of the Florida Deceptive Practices Act and the 1974 amendment to the Condominium Act are incorporated and made a part of all counts of the complaint. The supplemental allegations that the Community Facility Lease also violates the letter and intent of Article X, Section 4, Florida Constitution, is legally insufficient as a basis for the relief sought under any set of factual circumstances. The claim against the defendant savings and loan associations charging that their actions in making mortgages in connection with the condominium project constituted a combination in violation of Chapter 542, Florida Statutes, is legally insufficient as a basis for the relief sought under any set of facts which could be proved."
* * * * * *
Plaintiffs' brief on appeal presents four points, each urging error upon the trial court's order in failing to rule that the complaint afforded a basis for relief upon one of the legal theories advanced in the several counts of the complaint.[2]
The complaint alleges that the defendant developer submitted its land to condominium by filing a declaration of condominium. Each unit owner, simultaneous with his purchase of a unit at the condominium complex, under the declaration of condominium, became a lessee under the Recreational Facility Lease. The Lease provided for a lien which could be enforced against an individual apartment unit in case the owner of said apartment defaulted in payment of rent prescribed by the lease, as well as a lien upon the assets and common surplus of the association, said lien being a first lien paramount and superior to all others upon any right, title, and interest of the lessees in and to the lease of the demised premises therein. Also, the Lease is made binding on all successors in title to the individual condominium apartments, and the lien provisions constitute a covenant running with the land, even if the condominium itself is terminated.
By virtue of the Lease, each unit owner is obliged to pay a specified sum each month for ninety-nine years, with the sum to be increased in accordance with a cost of living index, but without a corresponding provision for a decrease should the cost of living decrease. Such payments are required by each unit owner regardless of whether the unit owner uses the facilities or not. Additionally, a transferee of a unit must assume performance of the transferor's obligations as a lessee under the Lease. And, the Lease provides that the assignment of said Lease and conveyance of the lessee's apartment unit must be simultaneous.
The complaint further alleges that Point East Condominium complex and its facilities have consumer appeal and are unique because of their location, price and the facilities offered. Plaintiffs argue that the facilities, services or personalty involved under the Lease are not part of the sales price or other part of the condominium unit but are separate and distinct facilities, personalty or services. The result is that by offering to sell a unique item with consumer appeal, the defendant developer had sufficient leverage to induce the plaintiffs to *35 accept the ninety-nine year Lease. Plaintiffs argue that the revenues collected under the Lease are unconscionable in that such revenues will eventually exceed several million dollars per year and will be collected well after the defendants have no economic interest left in the condominium complex.
In addition, the above activities of the defendants are alleged to restrain trade because they exclude condominium buyers from exercising their own free choice in selecting other recreational facilities, services or personalty, and preclude competitors of the defendant from offering the same or similar facilities to the plaintiffs. Such activities, therefore, are said to be unscrupulous, unethical, oppressive, and are damaging to the plaintiffs as purchasers of the units of the condominium complex, because plaintiffs are forced to pay fees for recreational facilities which are higher and more restricted than the same or similar facilities available, or that would be available, in a free competitive market. Such activities are said to be damaging to competitors, present or potential, in that such competitors are precluded from offering recreational facilities to the plaintiffs on a competitive basis.
The plaintiffs believe that the Lease agreement, when combined with the sale and resale of the condominium units, constitutes an unlawful tying agreement resulting in unreasonable restraint of trade and the destruction of competition within the lessees' and defendants' area of business. Such tying agreements also constitute a per se violation of the Sherman Antitrust Act (15 U.S.C. § 1).
We think that the trial judge's holding that the Florida Deceptive and Unfair Trade Practices Act does not render the lease void is well supported by the reasoning of the Supreme Court of Florida in Fleeman v. Case, 342 So.2d 815 (Fla. 1976). In that opinion, the court, in refusing to apply retroactively Section 711.231, Florida Statutes (1975), "Escalation clauses in leases for recreational facilities or management contracts for condominiums prohibited," held:
"Even were we to conclude that the Legislature intended retroactive application of this statute, we would be compelled to hold it invalid as impairing the obligation of contract under Article I, Section 10 of both the United States and Florida Constitutions. Yamaha Parts Distributors, Inc. v. Ehrman, 316 So.2d 557 (Fla. 1975). While we ordinarily do not reach constitutional questions not necessary to the disposition of the case, in this instance the principal contention of the parties and the rulings of the trial courts below were predicated on this constitutional issue. Therefore, we deem it appropriate to resolve this issue in this proceeding."
See also Cragin v. Ocean & Lake Realty Co., 101 Fla. 1324, 135 So. 795 (1931), and Board of Trustees of Internal Improvement Trust Fund v. Medeira Beach Nominee, Inc., 272 So.2d 209 (Fla. 2d DCA 1973). Cf. Avila South Condominium Association, Inc. v. Kappa Corporation, 347 So.2d 599 (Fla.), case no. 48,753, released March 31, 1977.
The holding of the trial judge that Section 711.66(5)(e), Florida Statutes (1975), is inapplicable is supported by the recent opinion of the Supreme Court of Florida in the Avila South case cited immediately above. This section of the Florida Condominium Act was passed by the legislature in 1974 as an amendment to the Act. The portion of the amendment relied upon by the plaintiffs is:
"711.66(5)(e)
Any grant or reservation made by a declaration or cooperative document, lease, or other document, and any contract made by an association prior to assumption of control of the association by unit owners other than the developer . . shall be fair and reasonable ..."
This portion of the amendment does not set new standards or requirements for recreational facility leases. It is, in its broad language, a restatement of the public policy of the State as it applies to recreational addenda and management contracts made between a condominium developer in his *36 capacity as a developer, on the one hand, and in his capacity as an owner of condominiums, on the other hand. The courts of this state have long reserved the right to refuse to enforce unconscionable contracts. See the general rule in Peacock Hotel v. Shipman, 103 Fla. 633, 138 So. 44 (1931), for the proposition that where
"... one party has overreached the other and has gained an unjust and undeserved advantage which it would be inequitable to permit him to enforce, . . a court of equity will not hesitate to interfere, even though the victimized parties owe their predicament largely to their own stupidity and carelessness."
* * * * * *
See also Halstead v. Florence Citrus Growers' Ass'n, 104 Fla. 21, 139 So. 132 (1932). Cf. Stewart v. Stearns & Culver Lumber Co., 56 Fla. 570, 48 So. 19 (1908). Thus, we agree with the trial judge that the amendment may not be considered as engrafting new requirements upon old contracts, but we hold that this fact does not preclude proof under the allegations of this complaint that the recreational facility lease is so unconscionable as to be unenforceable in the courts of Florida. We are encouraged in this holding by the recent pronouncement of the Supreme Court of Florida in Fleeman v. Case, 342 So.2d 815 (Fla. 1976), where the court in dealing with recreational facility leases said:
"Given the narrow issue presented by these appeals we do not decide questions as to the validity of these leases on any other grounds. Thus, although there is reference to the possibility that in some instances lease arrangements for individual unit owners may be unconscionable, inequitable or contain other deficiencies recognized in law as a basis for judicial invalidation, these matters are not considered or decided here."
We, therefore, conclude that the third count of the dismissed complaint does not, in its present form, wholly fail to state a cause of action. Cf. Fouts v. Margules, 98 So.2d 394 (Fla. 3d DCA 1957), and Hunter v. Fairmount House, Inc., 191 So.2d 92 (Fla. 3d DCA 1966). Therefore, in accordance with the holding in Avila South (supra), we will, on remand, direct that the plaintiffs be allowed to amend count three upon the possibility of stating an amended claim of unconscionability independent of Section 711.66(5), Florida Statutes (1975).
Plaintiffs' count four claims that the provision of the Recreational Facility Lease which provides for a lien upon their condominiums for unpaid rent on the Recreational Facility Lease is violative of the Florida Constitution in that it may call for the forced sale of a homestead forbidden by Article X, Section 4, of the Florida Constitution.[3] The possibility that a forced sale of a homestead might under some circumstances arise in the future does not form a basis for a declaration that the lease is unenforceable. The prohibition against forced sale of a homestead is a prohibition against the use of process for that purpose. It does not invalidate the debt or the lien, but under certain circumstances, merely takes priority over the debt or lien. See, for example, Milton v. Milton, 63 Fla. 533, 58 So. 718 (1912), and Quigley v. Kennedy & Ely Insurance, Inc., 207 So.2d 431 (Fla. 1968). We, therefore, do not reach the question of whether the lien is exempted from the constitutional prohibition by the method of its creation at the time of the purchase of the condominium. See Platt v. Platt, 50 Fla. 594, 39 So. 536 (1905). The complaint gives no facts which would entitle any of the plaintiffs to a declaration of their possible rights in the future. See Hunt v. Smith, 137 So.2d 232 (Fla. 2d DCA 1962), and Perry v. Genung, 163 So.2d 54 (Fla. 2d DCA 1964). Nevertheless, in accordance *37 with the holding of the Supreme Court of Florida in Avila South (supra), we direct that plaintiffs be given leave to amend this count on remand.
The fifth count of the complaint is based upon the allegation that the developer and the savings and loan associations providing the capital violated Chapter 542 Florida Statutes (1975), which is entitled "Combinations Restricting Trade and Commerce."[4] The count alleges that the plaintiffs believe that the defendants' activities above described, the declarations and the lease constitute a violation of the above-quoted statutes in that they prevent the plaintiffs and members of the class they represent from exercising their own free choice in selecting other recreational facilities and services, and preclude the competitors of the defendants from offering the same or similar facilities to the plaintiffs. A recreational facilities lease is recognized by the law as a valid adjunct to a condominium purchase. See Point East Management Corporation v. Point East One Condominium Corporation, Inc., 282 So.2d 628 (Fla. 1973), cert. denied, at 415 U.S. 921, 94 S.Ct. 1421, 39 L.Ed.2d 476 (1974). The complaint does not allege facts sufficient to show a combination in order to restrain trade.
Accordingly, the trial court's final order as to the dismissal of counts 1, 2 and 5 is affirmed, and as to counts 3 and 4 is reversed with leave to amend, and the cause is remanded for further proceedings in accordance with this opinion.
Affirmed in part, reversed in part and remanded.
HUBBART, Judge (concurring in part; dissenting in part).
I concur in the court's disposition of this case as to counts I-IV of the plaintiffs' complaint for the reasons stated in Judge Pearson's able opinion. I must respectfully dissent as to the court's affirmance of the dismissal on count V of the plaintiffs' complaint.
The issue presented for review as to count V of the complaint is whether a combination of capital or acts by a condominium developer together with certain savings and loan associations to sell condominium units with unique consumer appeal on the condition that the purchasers become lessees on a ninety-nine year recreational lease in which the developer is the lessor constitutes an illegal tying arrangement prohibited by the state anti-trust act at Section 543.05, Florida Statutes (1975), thereby making the recreational lease invalid. I would reverse the dismissal of this count and hold that such a recreational lease is an illegal tying arrangement prohibited by the state anti-trust act.

I
The plaintiffs' complaint at count V alleges that the defendant developer and the defendant savings and loan associations became engaged in a combination of capital and acts to sell, and did sell certain condominium units with unique consumer appeal to the plaintiffs on an alleged illegal condition, namely, that the plaintiff purchasers obligate themselves as lessees on a ninety-nine year recreational lease in which the defendant developer was the lessor. The lease allegedly contained an escalating rent *38 clause and required the condominium unit owners to pay for the taxes, insurance and all operation and maintenance costs for the life of the lease.
The complaint in this count further alleges that by offering to sell condominium units with unique consumer appeal, the defendant developer had sufficient economic leverage in this market to induce the plaintiff condominium owners to agree to be lessees on the aforesaid recreational lease. The defendant developer allegedly filed a declaration of condominium and submitted the recreational lease containing the aforesaid tying arrangements. The defendant savings and loan associations allegedly provided the capital in furtherance of the sale herein and participated in the drafting and/or approval of the above declaration of condominium and recreational lease. The condominium unit owners sought a declaratory judgment voiding the recreational lease, an injunction restraining the future enforcement of said lease and a money damages award.
The defendants filed respective motions to dismiss the complaint contending in effect that the facts alleged in the complaint, even if true, were legally insufficient to invalidate the recreational lease herein. The trial court entered an order granting the defendants' motions to dismiss on this ground holding in effect that the complaint stated no facts, even if true, which would invalidate the recreational lease. I respectfully disagree.

II
The relevant section of Florida's anti-trust act at Section 542.05, Florida Statutes (1975), makes the following activity unlawful:
"(1) Any person who shall or may become engaged in any combination of capital, skill or acts by two or more persons, firms, corporations or associations of persons or of either two or more of them, for either, any or all of the following purposes:
(a) To create or carry out restrictions in trade or commerce or aids to commerce, or to create or carry out restrictions in the full and free pursuit of any business authorized or permitted by the laws of this state;
(b) To increase or reduce the price of merchandise, produce or commodities;
(c) To prevent competition in the manufacture, making, transportation, sale, or purchase of merchandise, produce, or commodities, or to prevent competition in aids to commerce;
(d) To fix at any standard or figure whereby its price to the public shall be in any manner controlled or established any article or commodity of merchandise, produce, or commerce intended for sale, use, or consumption in this state; ... ."
Any contract or agreement made in violation of the above act is void and unenforceable. Section 542.10, Florida Statutes (1975). An action for damages also lies for violation of the above act. Hardrives Co. v. East Coast Asphalt Corp., 166 So.2d 810 (Fla. 2d DCA 1964).
Florida's anti-trust act was originally passed in 1915 and is patterned after the Sherman Anti-Trust Act at the federal level. 15 U.S.C. § 1 (1973). Its purpose is to prevent undue or unreasonable restrictions on free competition which are detrimental to the public welfare and obnoxious to public policy. City Gas Co. v. Peoples Gas System, Inc., 182 So.2d 429 (Fla. 1965); Lee v. Clearwater Growers Ass'n, 93 Fla. 214, 111 So. 722 (1927).
We deal here with a tying arrangement under anti-trust law wherein a party sells one product in which it has economic leverage to a buyer on the condition that the buyer agrees to purchase another product. Such arrangements have generally been struck down under laws forbidding unreasonable restrictions on free competition since they deny competitors free access to the market for the tied product solely because of the seller's economic power or leverage on the sale of the main product. Long v. Arizona Portland Cement Co., 89 Ariz. 366, 362 P.2d 741 (1961); Corwin v. Los Angeles Newspaper Service Bureau, Inc., 4 Cal.3d 842, 94 Cal. Rptr. 785, 484 P.2d 953 *39 (1971); State ex rel. Brown v. Napco, 44 Ohio App.2d 140, 336 N.E.2d 439 (1975); Southern Health Ass'n v. Harris Memorial Methodist Hospital, 180 S.W.2d 169 (Tex. Civ.App. 1944); Wright v. Southern Ice Co., 144 S.W.2d 933 (Tex.Civ.App. 1940).
The United States Supreme Court in Northern Pacific Railway Co. v. United States, 356 U.S. 1, 5-6, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958) states the applicable law on tying arrangements under anti-trust law:
"For our purposes a tying arrangement may be defined as an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier. Where such conditions are successfully exacted competition on the merits with respect to the tied product is inevitably curbed. Indeed `tying agreements serve hardly any purpose beyond the suppression of competition.' Standard Oil Co. v. United States, 337 U.S. 293, 305, 306, 69 S.Ct. 1051, 1058, 93 L.Ed. 1371, 1382. They deny competitors free access to the market for the tied product, not because the party imposing the tying requirements has a better product or a lower price but because of his power or leverage in another market. At the same time buyers are forced to forego their free choice between competing products. For these reasons `tying agreements fare harshly under the laws forbidding restraints of trade.' Times-Picayune Publishing Co. v. United States, 345 U.S. 594, 606, 73 S.Ct. 872, 879, 97 L.Ed. 1277, 1288."
In the instant case, the defendant developers in combination with the defendant savings and loan association allegedly sold condominium units with unique consumer appeal. Using its economic leverage in this market, the defendants have allegedly conditioned the sale of such units on the condominium unit owners' agreement to buy another tying product, to wit: the ninety-nine year recreational lease. As such, the alleged lease is clearly a tying arrangement under anti-trust law which restrains free competition in the recreational lease market.
The economic leverage which condominium developers have in the sale of condominium units over individual purchasers of such units has often been judicially noted. Avila South Condominium Ass'n v. Kappa Corp., 347 So.2d 599 (Fla.) (Case No. 48,753, opinion filed March 31, 1977) (England, J., concurring); Point East Management Corp. v. Point East One Condominium Corp., 282 So.2d 628 (Fla. 1973) (Ervin, J., dissenting); Fountainview Ass'n v. Bell, 214 So.2d 609 (Fla. 1968) (Ervin, J., dissenting). Condominium developers sell housing units with unique consumer appeal to an ever expanding population in Florida who are in need of reasonable housing. As such, the developers occupy a unique economic position in this seller's market which they should not be able to misuse by conditioning the sale of condominium units on the purchaser's agreement to become obligated on another contract, such as a ninety-nine year recreational lease. Such action constitutes an unreasonable restriction on free competition in the recreational lease market which is detrimental to the public welfare and obnoxious to public policy. City Gas Co. v. Peoples Gas System, Inc., 182 So.2d 429 (Fla. 1965); Lee v. Clearwater Growers' Ass'n, 93 Fla. 214, 111 So. 722 (1927).
The Fifth Circuit Court of Appeal in Miller v. Granados, 529 F.2d 393 (5th Cir.1976), has recently struck down such tying contracts in condominium unit sales under anti-trust law. The Court held that a complaint charging an anti-trust violation against certain condominium developers for requiring condominium unit owners to accept an exclusive management contract for managing the condominium complex as a condition for purchasing the condominium units stated a good cause of action under the Sherman Anti-Trust Act since the management contract was an illegal tying arrangement. The court stated:
"Under the aforementioned authorities we find that Count I of the complaint alleges all of the elements of a tie-in *40 arrangement involving a not insubstantial amount of interstate commerce, and sufficient economic leverage in the market with the potential of destroying free competition, which allegations on their face state a cause of action cognizable under the Sherman Act. Because of the grant by Congress to federal courts of exclusive jurisdiction over the anti-trust laws of the United States, it was error for the District Court to dismiss the complaint." Id. at 397.
The Miller decision is sound, is in accord with tying arrangements decisions under state and federal anti-trust law, and should be followed in Florida in interpreting our anti-trust act.
It is true that the state condominium act at Section 711.121, Florida Statutes (1975), authorizes condominium associations to enter into recreational leases. This statute, however, does not authorize such leases when made as an illegal tying arrangement prohibited by the state anti-trust act. Condominium recreational leases are in no sense exempt from anti-trust legislation.
It is also true that condominium recreational leases and management contracts comparable to the lease in this case have been upheld in the Florida courts. Point East Management Corp. v. Point East One Condominium Corp., 282 So.2d 628 (Fla. 1973); Fountainview Ass'n v. Bell, 203 So.2d 657 (Fla. 3d DCA 1967), aff'd, 214 So.2d 609 (Fla. 1968), although recently they have come under stricter judicial scrutiny. Avila South Condominium Ass'n v. Kappa Corp., 347 So.2d 599 (Fla.) (Case No. 48,753, opinion filed March 31, 1977). None of these cases, however, dealt with the issue presented in this case: namely, whether such leases violate the state anti-trust act. Such decisions therefore do not control the instant case.
Finally, the state anti-trust act was in effect at the time this recreational lease was entered into. No claim has been made or could be made that Section 543.05, Florida Statutes (1975), is inapplicable to this lease.
I join in the court's opinion in its disposition on counts I-IV on the plaintiffs' complaint. I dissent as to the court's affirmance of the dismissal on count V of the plaintiffs' complaint. I would reverse the dismissal of that count and remand for further proceedings consistent with this opinion.
NOTES
[1] The appeal was filed in the Supreme Court of Florida as one "... initially and directly passing on the validity of a state statute" and "... construing a provision of the state ... constitution." It was transferred to this court by the Supreme Court as being an appeal within our jurisdiction.
[2] See the discussion of the applicability of actions for declaratory relief in Lambert v. Justus, 335 So.2d 818 (Fla. 1976).
[3] "Section 4. Homestead; exemptions 

(a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by the head of a family: (1) a homestead ..."
[4] Chapter 542, Florida Statutes (1975) "Combinations Restricting Trade or Commerce," provides in part:

"542.05 Combinations prohibited; penalty
(1) Any person who shall or may become engaged in any combination of capital, skill or acts by two or more persons, firms, corporations or associations of persons or of either two or more of them, for either, any or all of the following purposes:
(a) To create or carry out restrictions in trade or commerce or aids to commerce, or to create or carry out restrictions in the full and free pursuit of any business authorized or permitted by the laws of this state;
* * * * * *
(c) To prevent competition in the manufacture, making, transportation, sale, or purchase of merchandise, produce, commodities, or to prevent competition in aids to commerce; ..."
"542.10 Contract in violation of chapter void
Any contract or agreement in violation of the provisions of this chapter shall be void and not enforceable either in law or equity."