James P. KARTELL, M.D., et al.,
Plaintiffs, Appellants,

v.

BLUE SHIELD OF MASSACHUSETTS,
INC., and Blue Cross of Massachu-
setts, Inc., Defendants, Appellees.

No. 78–1349.

United States Court of Appeals,
First Circuit.

Argued Nov. 9, 1978.

Decided Feb. 2, 1979.

David I. Shapiro, Washington, D.C., with whom James van R. Springer, Dickstein, Shapiro & Morin, Washington, D.C., John F. Sherman, III, and Warner & Stackpole, Boston, Mass., were on brief, for appellants.

Daniel O. Mahoney, Boston, Mass., with whom Reginald H. Howe, and Palmer & Dodge, Boston, Mass., were on brief, for appellees.

Before COFFIN, Chief Judge, ALDRICH and BOWNES, Circuit Judges.

ALDRICH, Senior Circuit Judge.

Defendant Blue Shield of Massachusetts, Inc. and Blue Cross of Massachusetts, Inc. are nonprofit, tax exempt medical service and hospital service corporations, organized to provide "for the preservation of the public health by furnishing medical services at low cost to members of the public who become subscribers. . . ." 1941 Mass. Acts c. 306, preamble. Mass.G.L. c. 176B (Blue Shield); c. 176A (Blue Cross). Defendant Blue Shield pays physicians who participate in its plan directly for services

rendered to premium-paying subscribers in scheduled amounts, while Blue Cross provides coverage for hospital care and procedures. Participating physicians, in turn, agree to accept Blue Shield's payments in full satisfaction for their services. Blue Shield pays nothing, however, on account of the services of nonparticipating physicians, unless rendered in an emergency, or outside of the Commonwealth.

At the present time defendants' subscribers constitute some 60% of the population of Massachusetts, and 99% of Massachusetts licensed physicians participate. Plaintiffs are four licensed physicians. Two do not participate in the Blue Shield plan; the other two presently do participate, but have given notice of their intent to resign. All are dissatisfied with Blue Shield participation because it requires physicians to limit themselves to the amounts of the Blue Shield schedules, and forbids what is termed balance billing of the patient. Hence physicians who wish to charge more than Blue Shield's schedules are cut off from a substantial number of possible patients who, because they would lose their Blue Shield benefits, must pay personally not merely a balance, but the entire bill. Claiming a conspiracy to monopolize, and unlawful boycott and coercion, in violation of the Sherman Act, 15 U.S.C. §§ 1 and 2 (1976), plaintiffs bring this suit under 15 U.S.C. § 26 (1976), seeking injunctive relief.

The district court, on motion, dismissed the complaint. Before the district court and on this appeal, defendants contend, *inter alia,* that their challenged practices are immunized from federal antitrust attack under the state action doctrine of *Parker v. Brown,* 1943, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315, and its progeny, or, alternatively, under the McCarran-Ferguson Act, 15 U.S.C. §§ 1011 *et seq.* (1976), as "the business of insurance . . . regulated by State law." *Id.,* § 1012(b). Finally, defendants ask us to abstain if we find the underlying issues of state law insufficiently clear. Since we conclude we should abstain, our opinion will be restricted to considerations relevant thereto.

We start with the fact that not only was Blue Shield established by special act of the state legislature for the public purpose previously stated, but its contracts with participating doctors, and its methods for compensating them, are subject to regulation, *viz.,* the written approval of the Massachusetts Commissioner of Insurance. So are the fee schedules, and the provision against balance billing. Also subject to such approval are its subscriber contracts, level of benefits, and premium rates. Defendants point to the fact that the statute, in terms, provides for payments "upon receiving medical service from any participating physician or, in the discretion of [Blue Shield], upon receiving medical service from any non-participating physician in an emergency or when outside the commonwealth," c. 176B § 7, and contend that this affirmative provision expressly negatives any broader scope.

Plaintiffs reject this statutory construction. In addition, they show that Blue Cross has made a separate contract with state employees to include nonparticipating physicians without limit. This agreement troubled the district court, but we do not pursue it, except to note that it presents a serious statutory question as to the extent that Blue Cross is permitted to invade the traditional province of Blue Shield by providing benefits for physicians' services.

Continuing, by G.L. c. 176B, § 3, Blue Shield is permitted to join with Blue Cross for the joint administration of their affairs and the issuance of joint subscriber contracts for both medical and hospital services. Under this overall statutory scheme, defendants, together, have become a pervasive and powerful force in the Massachusetts health insurance industry. At the same time, they are prohibited from engaging in acts of boycott, coercion or intimidation and it appears the legislature did not intend Blue Cross and Blue Shield to monopolize, or eliminate competition in, the private health insurance industry. *See* G.L. c. 176D, § 3; c. 176B, § 16. Just what this means, in view of the seemingly inevitable

consequences of defendants' success, is a serious state question.[1]

Plaintiffs say that defendants, at a minimum, have accomplished what they were forbidden to do, and that their agreements with their subscribers prohibiting the payment of benefits to nonparticipating doctors, and the steps they take to publicize and enforce them, and the ban against balance billing, constitute a concerted refusal to deal intended to coerce adherence to a maximum fee schedule, and as such are unlawful, per se, under the Sherman Act.[2] As to defendants' asserted exemption under *Parker v. Brown,* ante, plaintiffs, agreeing with the district court, maintain that the threshold inquiry for determining whether anticompetitive conduct by private parties, such as defendants, enjoys immunity under the state action doctrine, is whether under state law defendants are compelled to engage in the challenged conduct. Plaintiffs assert, further, however, that even assuming state compulsion, a federal court must also find that state law compelling the conduct is necessary to effectuate state policy, and is not fundamentally inconsistent with federal antitrust policy, before immunity can be granted, thereby raising the question of the extent of the state policy. *See Lafayette v. Louisiana Power & Light Co.,* 1978, 435 U.S. 389, 417–18, 98 S.Ct. 1123, 55 L.Ed.2d 364 (Marshall, J., concurring); *id.,* at 425–26, 98 S.Ct. 1123 (Burger, C. J., concurring); *Cantor v. Detroit Edison Co.,* 1976, 428 U.S. 579, 595–98, 96 S.Ct. 3110, 49 L.Ed.2d 1141; *id.,* at 605–11, 96 S.Ct. 3110, (Blackmun, J., concurring); L. Sullivan, Antitrust, § 238, at 736–37 (1977).

Without explicitly analyzing the compatibility of state and federal policy, the district court held that G.L. c. 176B, § 7 requires Blue Shield's refusal to deal with nonparticipating physicians. Additionally implicit was its view that proscribing balance billing is an integral part of the Blue Shield system, working in tandem with the participating requirement to promote the statutory purpose of low cost medical care. Accordingly, the court dismissed the action under *Parker v. Brown.*[3] In so holding, the court rejected several arguments based upon statutory construction, and failed to consider the implication, vis-a-vis the existence of state compulsion, of the conceded fact that for many years Blue Shield had allowed balance billing to high income subscribers, *cf. Massachusetts Med. Serv. v. Commissioner,* 1962, 344 Mass. 335, 338, 182 N.E.2d 298, and that the change was self-generated.

Resolution of these complex questions of state law presents serious difficulties. This is not to say, particularly where the ultimate issue is a federal one, that we should not do so. *See Propper v. Clark,* 1949, 337 U.S. 472, 69 S.Ct. 1333, 93 L.Ed. 1480. On the other hand, even here our obligation is not absolute. *See, e. g., Colorado River Water Cons. Dist. v. United States,* 1976, 424 U.S. 800, 813–17, 96 S.Ct. 1236, 47 L.Ed.2d 483. We are informed that there are presently pending before the Massachusetts Supreme Judicial Court consolidated class actions seeking to raise several aspects of Blue Shield's relationship with participating physicians, including the ban on balance billing. *Nelson v. Blue Shield of Mass., Inc.* and *Massachusetts Fed'n of Physicians & Dentists, Inc. v. Blue Shield of Mass., Inc.,* No. 1497. Since an opinion in these cases may substantially, perhaps even fully, answer certain questions of state law in a way that will permit

---

1. On the other hand, construction of 15 U.S.C. § 1013(b) withholding from the protection of the McCarran-Ferguson Act, ante, "any agreement to boycott, coerce, or intimidate, or act of boycott, coercion, or intimidation," *see generally St. Paul Fire & Marine Ins. Co. v. Barry,* 438 U.S. 531, 98 S.Ct. 2923, 57 L.Ed.2d 932 (U.S., 1978), *aff'g* 1 Cir., 1977, 555 F.2d 3, is, of course, a matter for us to decide.

2. It is, of course, axiomatic that agreements to establish maximum prices stand no better than those to fix minimums. *Albrecht v. Herald Co.,* 1968, 390 U.S. 145, 152–53, 88 S.Ct. 869, 19 L.Ed.2d 998; *Kiefer-Stewart Co. v. Joseph E. Seagram & Sons,* 1951, 340 U.S. 211, 213, 71 S.Ct. 259, 95 L.Ed. 219.

3. The court thus did not reach defendants' alternate claim of exemption under the McCarran-Ferguson Act.

easy answers, relatively speaking, to the federal ones, this has great appeal.[4] Especially if by any chance the proper interpretation of state law is such that a comprehensive health scheme affecting a majority of the public must be faulted, it would be better that the state court be the one to make it, or, conversely, to reject it.

In this circumstance we could take advantage of the Supreme Judicial Court's Rule 3:21, and certify questions, including, in that court's discretion, very general ones. *See, e. g., Baird v. Attorney General,* 1977 Mass.Adv.Sh. 96, 360 N.E.2d 288. However, in view of the cases that are already pending before it, in the interest of saving time and procedures in the long run, we prefer to consider simple abstention at this time.

In *Colorado River Water Cons. Dist. v. United States,* ante, the Court defined three limited categories of cases where "important countervailing interests" of federalism make abstention proper. First, abstention is appropriate "in cases presenting a federal constitutional question which might be mooted or presented in a different posture by a state court determination of pertinent state law. . . ." 424 U.S. at 814, 96 S.Ct. at 1244, quoting *County of Allegheny v. Frank Mashuda Co.,* 1959, 360 U.S. 185, 189, 79 S.Ct. 1060, 3 L.Ed.2d 1163. The second category, and the one most applica-

ble here, allows abstention, "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar. *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, [79 S.Ct. 1070, 3 L.Ed.2d 1058] (1959) . . . *Kaiser Steel Corp. v. W. S. Ranch Co.,* 391 U.S. 593, [88 S.Ct. 1753, 20 L.Ed.2d 835] (1968).

. . . In some cases, however, the state question itself need not be determinative of state policy. It is enough that the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern . . . *Burford v. Sun Oil Co.,* 319 U.S. 315, [63 S.Ct. 1089, 87 L.Ed. 1424] (1943); . . . *Alabama Pub. Serv. Comm'n v. Southern R. Co.,* [341 U.S. 341 [71 S.Ct. 762, 95 L.Ed. 1002] (1941)]." 424 U.S. at 814, 96 S.Ct. at 1244.

Finally, abstention may also be appropriate under the doctrine of equitable restraint of *Younger v. Harris,* 1971, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, where federal jurisdiction is invoked to enjoin a state criminal prosecution or other state enforcement proceeding.[5] *See* 424 U.S. at 816–17, 96 S.Ct. 1236.

4. Many procedural attacks are made on the decision of the superior court, but, if these fail, the Supreme Judicial Court is presented with the question whether Blue Shield's refusal to compensate subscribers for nonparticipating services, except in emergencies, is legislatively dictated (Blue Shield S.J.C. brief, 25, n.); whether Blue Shield is engaged in "trade or commerce" (*Id.,* 17, 54 *et seq.*), and whether the agreements are "contract[s] of adhesion, containing various unfair and oppressive provisions," (*Id.,* 10) or cannot be such because of the statutory provisions. (*Id.,* 62).

5. In arguing against abstention, plaintiffs seek to rely on *Vendo Co. v. Lektro-Vend Corp.,* 1977, 433 U.S. 623, 97 S.Ct. 2881, 53 L.Ed.2d 1009 and *Miller v. Granados,* 5 Cir., 1976, 529 F.2d 393. They are not helpful. In those cases, both federal antitrust actions, abstention under the *Younger* doctrine was unsuccessfully urged on the ground that there were civil actions pending in the state courts involving the same subject matter. These cases do not suggest that abstention may not be justified in an anti-

trust action where the requirements of *Colorado River's* other categories are satisfied. *See Puerto Rico Int'l Airlines v. Silva Recio,* 1 Cir., 1975, 520 F.2d 1342, 1344–45 n. 4; *cf. California New Motor Veh. Bd. v. Orrin W. Fox Co.,* —— U.S. ——, ——, 99 S.Ct. 403, 58 L.Ed.2d 361 (1978) (abstention in federal antitrust action not warranted because no ambiguity in state law); *Mach-Tronics, Inc. v. Zirpoli,* 9 Cir., 1963, 316 F.2d 820 (no need to determine questions of state law); *Schenley Ind., Inc. v. New Jersey Wine & Spirit Whole. Ass'n,* D.N.J., 1967, 272 F.Supp. 872 (same).

Moreover, the holding in *Vendo Co.,* ante, that section 16 of the Clayton Act generally does not provide an express exception to the Anti-Injunction Act, 28 U.S.C. § 2283, so as to allow a federal antitrust court to enjoin a state civil action, suggests that considerations of federalism, which underlie both the Anti-Injunction Act and the abstention doctrine, have force even in the antitrust field. *See also Parker v. Brown,* 1943, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315.

Under the second category of abstention represented by the leading case, *Louisiana Power & Light Co. v. City of Thibodaux,* ante, the exercise of federal jurisdiction is not denied, but merely deferred pending a definitive resolution of the difficult state law questions involved by the state courts. See *id.,* 27 n. 2, 30–31; *Kaiser Steel Corp.,* ante.

It is true that if we abstain without certifying, plaintiffs themselves are not personally present in the pending state court proceedings. We may assume, however, that their positions, so far as relevant, are well represented and will not be neglected by the court. Moreover, were we to certify questions, unless the Massachusetts court were to delay its pending proceedings plaintiffs presumably will find themselves faced with a decision in the pending cases before they are personally reached for hearing in any event.

Simple abstention will avoid unnecessary friction and possibly serious consequences to state policy "whose importance transcends the results in the case . . . at bar." *Colorado River,* ante, at 814. Indeed, this seems a clearer case for it than many earlier ones. *See, e. g., Kaiser Steel Corp.,* ante, (water rights); *Thibodaux,* ante, (municipality's power of eminent domain); *Naylor v. Case & McGrath, Inc.,* 2 Cir., 1978, 585 F.2d 557, 564–65 (standing to sue under state Unfair Trade Practices Act); *Construction Aggregates Corp. v. Rivera de Vicenty,* 1 Cir., 1978, 573 F.2d 86, 96 (Puerto Rico workmen's compensation rate making process); *Druker v. Sullivan,* 1 Cir., 1972, 458 F.2d 1272 (city's authority to impose rent control); *Allegheny Airlines, Inc. v. Pennsylvania Pub. Util. Comm'n,* 3 Cir., 1972, 465 F.2d 237, *cert. denied,* 410 U.S. 943, 93 S.Ct. 1367, 35 L.Ed.2d 609 (state regulations governing termination of intrastate air service); *Dome Condominium Ass'n v. Goldenberg,* S.D.Fla., 1977, 442 F.Supp. 438 (state regulation of condominium development); *Meicler v. Aetna Cas. & Sur. Co.,* S.D.Tex., 1974, 372 F.Supp. 509 (insurance risk reclassification). The judg-

ment dismissing the complaint is vacated. The case is remanded to the district court with instructions to retain jurisdiction and to abstain pending resolution of state law questions by the Massachusetts courts. We leave it to the district court to determine whether the decision of the Supreme Judicial Court in the pending cases, when rendered, provides sufficient guidance, or whether further state proceedings of some kind may be required. In this connection the district court should permit the parties to be heard on the alternative of certifying, not only as to the form of the particular questions, but as to the record to be made to permit their full consideration.

COFFIN, Chief Judge (dubitante).

While I share the court's desire to defer to the Massachusetts courts for all the help we can get, and feel its resolution makes sense, I confess to some uneasiness about our privilege as an appellate court simply to abstain when the district court has not seen fit to do so.

My doubts stem from what I assume is the continuing vitality of *Meredith v. Winter Haven,* 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943), that, absent exceptional circumstances of a recognized nature, a federal court is not permitted to deny litigants a resolution of their problems "merely because the answers to the questions of state law are difficult or uncertain or have not yet been given by the highest court of the state". *Id.* at 234–35, 64 S.Ct. at 11. 1A Moore's Federal Practice, ¶ 0.203[4] at 2135 (2d ed. 1978). Moreover, *Meredith* was a diversity case, while here the ultimate issue is one of exclusive federal jurisdiction, antitrust law, a factor which may "raise the level of justification for abstention." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 815 n. 21, 96 S.Ct. 1236, 1245, 47 L.Ed.2d 483 (1976). The court concludes, however, that this case possesses the exceptional character of the second category of abstention cases recognized in *Colorado River Water Conservation District v. United States, supra,* 424 U.S. at 814–15, 96 S.Ct. 1236.

I hope the court is correct. But I question whether, even though litigation is and was at the outset of the federal suit pending in the state court, any question was presented there which is likely to be significant in resolving the federal question before us. The court in its footnote 4 cites to a brief which raises the issue "whether Blue Shield's refusal to compensate subscribers for nonparticipating services, except in emergencies, is legislatively dictated" and whether agreements escape being unfair contracts of adhesion because of the compulsion of statutes. I have no judgment on this, except that my reading of the Massachusetts Superior Court opinion suggests instead that the relevant issue is whether the anticompetitive conduct is "permitted" and not whether it is "compelled" by state law. M.G.L. ch. 93A, § 3(1)(a).

If there is, in the pending state litigation, a state law question which bears on the federal case, *Colorado River* requires that it bear on "policy problems of substantial public import whose importance transcends the result in the case at bar." 424 U.S. at 814, 96 S.Ct. at 1244. This is a delphic formula. I am not sure that the instant case measures up. It is true that regulating the amounts of medical and hospital bills is an important function. But the precise question whether Massachusetts law requires, or authorizes or forbids any official to require that there be no balance billing does not pose a fundamental question of state power such as is contemplated by *Colorado River* and the cases it invokes.

If no such basic policy problem is implicated, I suspect that the other basis for this kind of abstention is also missing—the prospect that federal review here and in similar cases "would be disruptive of state efforts to establish a coherent policy". *Id.* at 814, 96 S.Ct. at 1245. The result of federal decision here would be either that the ban on balance billing is or is not a violation of the antitrust laws. Once the answer is known, state policy can be as coherent as it wishes to be.

The court's opinion would first require the district court to abstain, but would leave open the possibility of certifying. This has the merit of allowing the district court to perfect the record before questions are certified. But even though the court deferred certification "in the interest of saving time and procedures", such deferment threatens, if decision on pending state cases proves unhelpful, to involve a needless delay. I would immediately certify, with no qualms about the legal responsibility of so doing. *Lehman Bros. v. Schein,* 416 U.S. 386, 94 S.Ct. 568, 38 L.Ed.2d 467 (1974). This would start the wheels in motion. If, before decision on the certified questions were forthcoming, decisions on pending Massachusetts cases resolved any such questions, they need not be addressed again. And if, in the process of considering the questions certified the Massachusetts court finds the record to be inadequate, I would see no reason why it could not require the record to be supplemented as might be necessary.